UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br> -against-<br><br>JEREMY KOSKI,<br><br>       Defendant. | COMPLAINT<br><br>23 Civ. 7779<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Jeremy Koski ("Koski" or "Defendant"), alleges as follows:

## SUMMARY

1. Koski perpetrated a fraudulent scheme to artificially inflate the price of an equity security by creating and disseminating fake press releases and fake redemption notices, which he has since admitted under oath he fabricated for the purpose of inflating the security's share price.

2. Koski committed his fraud through the CorTS Trust for J.C. Penney Debentures Corporate-Backed Trust Securities Certificates of Structured Products Corp. ("COTRP"), a structured equity security issued by a trust ("Trust") that holds $100 million in 7.625% J.C. Penney Company, Inc. ("J.C. Penney") debentures due in 2097 ("Debentures").[1]  Each COTRP share (issued in the form of certificates) has a principal value of $25 and entitles the holder to receive semi-annual interest payments and repayment of principal from the Trust contingent on J.C. Penney's payments of interest and principal on the underlying Debentures. As of April 2021, Koski owned nearly 300,000 COTRP shares, representing more than 7% of all COTRP shares issued and outstanding.

---

[1] A debenture is a form of debt secured by the debtor's earning power, not by a lien on any asset.

3. In May 2021, Koski created fake redemption notices, on the letterhead of the trustee for the Trust, falsely stating that the COTRP shares were being called for redemption early and at their full principal value. Koski anonymously posted the fake redemption notices on multiple internet message boards. The fake redemption notices caused COTRP's share price to spike and injured innocent investors who purchased COTRP at artificially inflated prices. While COTRP's price was artificially inflated, Koski sold a small amount of his COTRP holdings.

4. Subsequently, Koski created fake COTRP press releases, which he designed to look legitimate, falsely claiming that COTRP was converting to a so-called "cryptocurrency," and Koski published the press releases via a news distribution service in an attempt to further manipulate the price of COTRP shares.

5. Koski has admitted to his scheme. In sworn investigative testimony before the Commission, he conceded that he fabricated the fake redemption notices and fake press releases, that he knew their contents were false, and that he published them to try to create artificial interest in and raise the price of COTRP shares.

6. By engaging in the conduct described above and herein, Koski has violated, and unless enjoined will again violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7. The Commission brings this action pursuant to Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)] to enjoin such acts, practices, and courses of business, and to obtain civil money penalties. The Commission also seeks a judgment prohibiting Koski from participating in an offering of any

penny stock pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)], and also prohibiting Koski from directly or indirectly, engaging in any activity for the purpose of inducing or attempting to induce the purchase or sale of any security; causing any person or entity to engage in any activity for the purpose of inducing or attempting to induce the purchase or sale of any security; or deriving compensation from any activity engaged in for the purpose of inducing or attempting to induce the purchase or sale of any security; unless that security is: (i) listed on a national securities exchange; and (ii) has had a market capitalization of at least $50,000,000 for 90 consecutive days pursuant to Exchange Act Sections 21(d)(1) [15 U.S.C. § 78u(d)(1)] and 21(d)(5) [15 U.S.C. § 78u(d)(5)] and Securities Act Section 20(b) [15 U.S.C. § 77t(b)]. Finally, the Commission seeks any other and further relief the Court may deem just and appropriate.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to Securities Act Sections 20(d) and 22(a) [15 U.S.C. §§ 77t(d) and 77v(a)] and Exchange Act Sections 21(d) and 27 [15 U.S.C. §§ 78u(d) and 78aa]. Koski, directly and indirectly, made use of the mails, or the means and instrumentalities of interstate commerce, in connection with the transactions, acts, practices, and courses of business alleged herein.

9. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the Southern District of New York. Among other things, Koski disseminated his false statements into this District in the form of false notices and press releases, and a victim of Koski's fraud is located and suffered losses in

this District.  Additionally, the Trust that issued the securities that are the subject of Koski's false statements is headquartered in this District.

## DEFENDANT

10.    **Koski**, age 45, is a resident of Kapaau, Hawaii.  Koski has previously worked as an information technology specialist in the aerospace industry but is currently unemployed.

## RELEVANT NON-PARTY

11.    CorTS Trust for J.C. Penney Debentures is a Trust with its current principal place of business in New York, New York.  The Trust was formed in May 1999 for the purpose of holding $100,000,000 7.625% Debentures due 2097 issued by J.C. Penney.  The Trust issued 4 million securities in the form of certificates, with a principal value of $25, each of which entitled the holder to receive semi-annual interest payments on the security's principal amount at the rate of 7.625% per annum and a pro rata share of a single payment of $100,000,000 in principal due from J.C. Penney in 2097.  Each certificate trades under the symbol COTRP in the over-the counter market and is a "penny stock" as defined in 17 C.F.R. § 240.3a51-1.  The sole source of interest and principal payments to the holders of COTRP is payment by J.C. Penney on the underlying Debentures held by the Trust.  The trustee for the Trust is U.S. Bank Trust National Association ("U.S. Bank").

## DEFENDANT'S FRAUDULENT SCHEME

12.    In September 2020, Koski began purchasing COTRP shares and, over the next seven months, acquired 287,388 COTRP shares at a total cost of approximately $301,973, or an average price of approximately $1.05 per share.  Koski's COTRP holdings represented more than 7% of all COTRP shares outstanding.

13.    By the end of April 2021, at a time when J.C. Penney was less than five months removed from exiting Chapter 11 bankruptcy, COTRP—the value of which was directly linked

to J.C. Penney's payment of semi-annual interest and principal on the Debentures to the Trust—was trading at a price of approximately $0.07 per share.

14. At that time, the total value of Koski's COTRP's shares, based on the market price, was approximately $20,700, representing an unrealized loss to Koski of more than $281,000.

15. Faced with a more than 90% loss on his investment, Koski orchestrated an unlawful scheme to artificially inflate the value of COTRP by publishing false statements concerning the Trustee's intention to redeem the COTRP certificates early and COTRP's future business plans.

### I. Koski Makes False Statements About the Redemption of the Debentures.

16. On or about May 5, 2021, Koski forged a fake notice on the letterhead of U.S. Bank, the trustee for the Trust that held the Debentures and issued COTRP, in which Koski wrote that $4 million of COTRP shares would be redeemed at their full principal value on June 14, 2021 ("False Redemption Notice").

17. Koski knew that this statement was false and that neither U.S. Bank, as Trustee for COTRP, nor J.C. Penney as debtor for the Debentures, had stated that the COTRP shares would be redeemed early or that J.C. Penney would pay the principal of any Debentures before the due date in 2097.

18. On Friday, May 7, 2021, after the market closed, Koski—using an anonymous user name that he had created with an alias—posted the False Redemption Notice to InvestorsHub.com's COTRP message board, an internet forum for discussing investments in COTRP.

19. A few hours later, Koski—using another anonymous user name—posted a screenshot of a different version of the False Redemption Notice on Stocktwits.com's message

board, another internet forum for investor discussion, which falsely stated that $100 million of the COTRP shares would be redeemed early on June 14, 2021.

20. When posting the False Redemption Notices, Koski used a virtual private network, or VPN, to attempt to hide his IP address and further mask his identity.

21. Koski knowingly posted the False Redemption Notices, which he had fabricated and knew were false, for the purpose of artificially increasing COTRP's share price.

22. Koski's fraudulent message board activity did just that, causing a large spike in both COTRP's share price and trading volume after market open on Monday, May 10, 2021.

23. In the 30 days before Koski posted the False Redemption Notices, COTRP shares traded between approximately $0.01 and $0.27 per share, and an average of approximately 3,200 COTRP shares were traded each day.

24. In the first trading day after Koski posted the False Redemption Notices, May 10, 2021, COTRP's price reached $1.11 per share, nearly 600% above COTRP's May 7, 2021, closing price of $0.19. Also that day, more than 270,000 COTRP shares were traded, approximately 85 times more than the average daily trading volume over the prior 30 days.

25. On May 10, 2021, while the price for COTRP shares was artificially inflated, Koski sold 800 of his COTRP shares and received proceeds of $815.

26. Koski's fraud harmed investors who purchased COTRP shares at artificially inflated prices on May 10, 2021 and in the days that followed.

27. On March 23, 2023, during investigative testimony before the Commission, Koski admitted, under oath, that he (i) fabricated the False Redemption Notices; (ii) knew their contents were false; and (iii) posted them to InvestorsHub.com and Stocktwits.com for the purpose of artificially inflating COTRP's share price.

## II. Koski Makes False Statements About COTRP's Purported Cryptocurrency Business.

28. Between September and November 2021, Koski engaged in a second scheme to manipulate the price of COTRP shares. During that time, Koski's COTRP holdings continued to be substantial. As of September 23, 2021, Koski held approximately 311,280 COTRP shares, or more than 7.5% of all COTRP shares issued and outstanding.

29. To further his scheme, on or about September 24, 2021, Koski concocted a fake press release under COTRP's name (the "False Press Release"), in which Koski wrote that "COTRP is pleased to announce its developing new technology to convert CUSIP 220803100 COTRP certificates to COTRP cryptocurrency in collaboration with Jim Simons," referring to the well-known founder of the Renaissance Technologies hedge fund.

30. In the False Press Release, Koski wrote that COTRP's conversion to a purported "cryptocurrency" "should allow the fund to recover the face value of $25" for each COTRP share.

31. Koski knew that each of the foregoing statements he made in the False Press Release was false. Koski knew that COTRP had not announced any plan to convert to a so-called "cryptocurrency," any plan to allow holders of COTRP to recover the $25 face value of their securities, or any collaboration with Jim Simons.

32. To create the appearance of legitimacy and further deceive investors, Koski wrote in the False Press Release that COTRP's media contact could be reached at an email address with the domain "cotrp.net."

33. That, too, was false, as Koski knew. The "cotrp.net" domain is not associated with COTRP, but had been created and registered by Koski one day earlier.

34. On September 24 and November 15, 2021, Koski paid to publish substantially identical versions of the False Press Release on Issuewire.com, a press release distribution service that assists in causing press releases to be widely distributed.

35. At the same time, Koski attempted to publish the False Press Release via the InvestorsHub.com NewsWire service, another portal for widely distributing press releases, but InvestorsHub.com NewsWire rejected the False Press Release.

36. From July 9 through September 24, 2021, Koski purchased an additional 23,442 COTRP shares, generally submitting numerous bids for small quantities at above-market prices, in an attempt to further manipulate COTRP's share price and deceive investors.

37. Despite Koski's fraudulent and manipulative conduct, COTRP's share price and trading volume did not change significantly following the publication of the False Press Releases or his manipulative trading between July and September 2021.

38. On March 23, 2023, during his investigative testimony before the Commission, Koski conceded, under oath, that he (i) fabricated the False Press Releases; (ii) knew their contents were false; and (iii) published them via Issuewire.com for the purpose of artificially inflating COTRP's share price.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)**

39. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 38.

40. Defendant, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or the mails, have: (a) employed one or more devices, schemes or artifices to defraud, (b) obtained money or property by means of one or more untrue statements of a material fact or omissions of a material

fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (c) engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

41. By reason of the foregoing, Defendant, directly or indirectly, has violated and, unless enjoined, will again violate, Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

42. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 38.

43. Defendant, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly (a) employed one or more devices, schemes, or artifices to defraud, (b) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (c) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

44. By reason of the foregoing, Defendant, directly or indirectly, has violated and, unless enjoined, will again violate, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

# PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Finding that Defendant committed the violations alleged in this Complaint;

## II.

Permanently enjoining Defendant from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## III.

Ordering Defendant to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

## IV.

Permanently prohibiting Defendant from participating in any offering of any penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

## V.

Permanently prohibiting Defendant from directly or indirectly, engaging in any activity for the purpose of inducing or attempting to induce the purchase or sale of any security; causing any person or entity to engage in any activity for the purpose of inducing or attempting to induce the purchase or sale of any security; or deriving compensation from any activity engaged in for the purpose of inducing or attempting to induce the purchase or sale of any security; unless that security is: (a) listed on a national securities exchange; and (b) has had a market capitalization of

at least $50,000,000 for 90 consecutive days, pursuant to Exchange Act Sections 21(d)(1) [15 U.S.C. § 78u(d)(1)] and 21(d)(5) [15 U.S.C. § 78u(d)(5)] and Securities Act Section 20(b) [15 U.S.C. § 77t(b)]; and

## VI.

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
September 1, 2023

    /s/ Antonia M. Apps
ANTONIA M. APPS
REGIONAL DIRECTOR
Tejal D. Shah
George N. Stepaniuk
Christopher M. Colorado
Mariel Bronen
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-9143 (Colorado)
ColoradoCh@sec.gov